No. 66,497

In the Matter of ROBERT R. CAIN, *Respondent.*

(819 P.2d 1230)

Opinion filed October 25, 1991.

*Paula B. Martin,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, and *Stanton A. Hazlett,* deputy disciplinary administrator, were on the formal complaint for the petitioner.

There was no appearance by respondent or counsel.

*Per Curiam:* This original proceeding in discipline was filed by the office of the disciplinary administrator against Robert R. Cain, of Kansas City, Kansas, an attorney admitted to the practice of law in the State of Kansas. The formal complaint filed against respondent alleges violations of MRPC 1.3 (1990 Kan. Ct. R. Annot. 219), 1.4 (1990 Kan. Ct. R. Annot. 220), and 8.4(g) (1990 Kan. Ct. R. Annot. 290), and Canons 1 (1990 Kan. Ct. R. Annot. 165), 6 (1990 Kan. Ct. R. Annot. 188), 7 (1990 Kan. Ct. R. Annot. 193), and 9 (1990 Kan. Ct. R. Annot. 204). Respondent did not file an answer.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on March 1, 1991, in the Harold R. Fatzer hearing room at the Kansas Judicial Center, Topeka, Kansas. Respondent did not appear in person or by counsel. The panel made the following findings of fact:

"1. "Respondent is an attorney at law. He is presently suspended from the practice of law. See *In re Cain,* 247 Kan. 673 [, 801 P.2d 1325 (1990)].

"2. Complainant Peggy L. Warhurst is a resident of Kansas City, Kansas. She is presently employed at Mercy Credit Service, Merriam, Kansas.

"3. Mrs. Warhurst testified she was injured on the job at Winchell's Donuts on August 25, 1985. She retained Donald L. Zemites, attorney at law, to file a workers' compensation claim on her behalf. She entered into a written contract of employment with Mr. Zemites. In December of 1985, Mr. Zemites referred Mrs. Warhurst to the Respondent. Mr. Zemites and the Respondent practiced law in the same building. Mr. Zemites told Mrs. Warhurst he was too busy to handle her claim and Respondent would do it for her.

"4. Mrs. Warhurst met with Mr. Cain in person upon being referred by Mr. Zemites. She did not sign a written contract with Respondent. Re-

spondent told Mrs. Warhurst he would handle the claim. All of Mrs. Warhurst's records in her possession were provided to Mr. Zemites and then to Respondent.

"5. Mrs. Warhurst heard very little from the Respondent. She became concerned about her litigation and made numerous attempts to contact Respondent by telephone during 1986. She spoke with him several times on the telephone and he advised her he had filed a claim on her behalf and he told her the claim was proceeding well and there were no problems.

"6. Respondent set up an appointment for Mrs. Warhurst to be examined by Nathan Shechter, M.D. on May 19, 1987, in order to get a disability rating. Mrs. Warhurst paid $350.00 by check directly to Respondent for the doctor's fee. Mrs. Warhurst was examined by Dr. Shechter. At or around the time of the examination, Dr. Shechter's office told her an additional $115.00 was due and owing for the examination. She paid the additional $115.00 directly to the doctor.

"7. Shortly after her examination, Mrs. Warhurst received a bill from Dr. Shechter's office for $350.00. She advised the doctor's office that the amount had previously been paid to Respondent. They, in turn, stated Respondent's check to them for $350.00 in payment for the examination had bounced.

"8. Mrs. Warhurst then made numerous attempts to contact Respondent about the bill. Eventually she was able to reach him and he made the check good.

"9. The report from Dr. Shechter lists a 5% to 10% disability to the body as a whole as well as the suggestion that additional medical treatment may be required periodically. The medical report was mailed to Respondent in May. He never provided Mrs. Warhurst with a copy of the report despite her requests to see it.

"10. Mrs. Warhurst continued to leave telephone messages for the Respondent to contact her during 1987-1988 at both his home and office. She grew increasingly concerned when she heard nothing. In September of 1988 she received a letter from the insurance carrier for Winchell's Donuts advising her to contact the carrier about her claim. She spoke with Wanda Hedeberg, Workers' Compensation supervisor, on September 6, 1988, who told her she was in danger of losing her compensation claim. Still unable to reach Respondent Mrs. Warhurst went to his offices. She discovered that Respondent had moved and sought Mr. Zemites' assistance in locating him. Mr. Zemites was able to obtain a telephone number for Respondent and had him call Mrs. Warhurst within a few days.

"11. Respondent assured Mrs. Warhurst that she was not to worry and she would not lose her claim. Thereafter, Mrs. Warhurst heard nothing further from Respondent. Her numerous telephone calls and correspondence went unanswered.

"12. On July 12, 1990, Mrs. Warhurst again contacted Mr. Zemites for assistance because he had referred her to Respondent and transferred her file to him. Mr. Zemites advised her during the telephone conversation that Respondent was having personal problems. Mr. Zemites also told Mrs.

Warhurst that Respondent had previously told him that Mrs. Warhurst did not get rated for disability. Finally Mr. Zemites instructed Mrs. Warhurst to ask for her file from Respondent and sue Respondent.

"13. Mrs. Warhurst also called the Kansas Workers' Compensation Director's office on July 12, 1990. She was told they had no record concerning her claim. She sent Respondent a registered letter requesting the return of her file. He signed for the letter but has never returned her file.

"14. John M. Duma was appointed to investigate the charges against Respondent.

"15. Mr. Duma sent Respondent two letters requesting the Respondent to contact him about the charges. Respondent did not answer the letters. Upon contacting the Kansas Workers' Compensation Director's office in August of 1990, Mr. Duma confirmed that there had never been a claim filed on behalf of Mrs. Warhurst by Mr. Cain. He was told it was beyond the statute of limitations for her to proceed in her workers' compensation case.

"16. Mrs. Warhurst complains of pain and suffers with back spasms as a result of the injury. She has seen a neurologist, but cannot afford the medical treatment she requires."

The panel concluded that there was clear and convincing evidence that respondent's actions with respect to the handling of the claim on behalf of Peggy L. Warhurst constituted a violation of MRPC 1.3, 1.4, and 8.4(g), and Canons 1, 6, and 7.

The panel recommended that respondent be disciplined by disbarment from the practice of law pursuant to Supreme Court Rule 203(a)(1) (1990 Kan. Ct. R. Annot. 137). Respondent was directed to appear before this court pursuant to Supreme Court Rule 212(d) (1990 Kan. Ct. R. Annot. 149) but failed to do so.

After carefully reviewing the record in this action, we agree with and adopt the panel's findings, conclusions, and recommendations.

IT IS THEREFORE ORDERED that Robert R. Cain be and he is hereby disbarred from the practice of law in this state, and the clerk of the appellate courts is directed to strike his name from the roll of attorneys authorized to practice law in Kansas.

IT IS FURTHER ORDERED that respondent shall comply with the provisions of Supreme Court Rule 218 (1990 Kan. Ct. R. Annot. 155).

IT FURTHER ORDERED that the costs of the proceeding be assessed to the respondent, and that this order be published in the official Kansas Reports.